**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JIQIN YANG, Personal Representative of the heirs of FENGYUN WU, deceased, | No. 14-cv-06482 |
| Plaintiff, | Honorable Rebecca R. Pallmeyer |
| v. | Magistrate Judge Jeffrey T. Gilbert |
| AIR CHINA LIMITED and THE BOEING COMPANY, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF BOEING'S
MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiff conceded in discovery, and Seventh Circuit case law is crystal clear, that expert testimony is required in order for Plaintiff to prove that a defect in a component of a complex product like a large, twin-aisle jet aircraft—including a defect in the door of the aircraft— somehow caused Fengyun Wu's death on a jet bridge in the Beijing airport. Given that Ms. Wu was found unconscious with no witnesses who can testify as to what happened before she became unconscious, expert testimony is also required merely to explain her condition. Plaintiff, however, has no admissible expert testimony and no direct evidence supporting his case. What remains is circumstantial evidence, and it does not support Plaintiff's theory. Summary judgment against Plaintiff, who presents only speculation and conjecture, is proper for several reasons.

The undisputed facts are these: Ms. Wu, a seventy-year old woman, died on a jet bridge after exiting an Air China flight from Los Angeles to Beijing. *No one saw what happened.* She was found lying sideways on the jet bridge, face up, approximately 2 to 3 meters (6 to 10 feet) from the aircraft door. She was unconscious, pale, sweating, and breathing rapidly. Flight attendants attempted first aid, administered nitroglycerin, and summoned the airport's medical team, but Ms. Wu died. Her death certificate describes the cause as sudden death by either pulmonary embolism or a myocardial infarction. No additional forensic investigation was done.

Plaintiff's theory is that Ms. Wu slipped or otherwise lost her balance when exiting the aircraft because of a product defect in the aircraft door sill, and that Ms. Wu fell and sustained sufficient trauma to cause her sudden death. Plaintiff has no admissible evidence to support that very unlikely scenario. ***First***, expert product defect testimony is required to prove Plaintiff's case, and Plaintiff's only expert is an emergency room doctor whose entire opinion is speculation without any citation of medical literature or scientific methods, and who is admittedly unqualified to testify about accident reconstruction or aircraft design. ***Second***, Plaintiff cannot

point to sufficient evidence from which a reasonable jury could even find that Ms. Wu slipped on the door sill, that the condition of the door caused any loss of footing, that the condition of the door was the result of a product defect or that the loss of footing caused Ms. Wu's death. Each of those theories is pure speculation from only a few known facts surrounding the unwitnessed collapse of Ms. Wu, and the speculation itself is at odds with the facts. Further, Plaintiff has no evidence that the door was in the same condition as when Boeing delivered the aircraft to Air China.

Summary judgment for Boeing is warranted on Counts II and III of the Complaint.

## BACKGROUND

Fengyun Wu departed Boston's Logan International Airport on November 28, 2012 and arrived at Los Angeles International Airport later that evening. (Stmt. ¶ 9.) Shortly after midnight, on November 29, 2012, Ms. Wu departed from Los Angeles on Air China Flight CA984. (Stmt. ¶ 10.) Flight CA984 was a non-stop flight to Beijing on a Boeing 777-300 aircraft. (Stmt. ¶ 11.) Ms. Wu was assigned seat 43E, a middle economy seat. (Stmt. ¶ 12.) Flight operations were normal. (Stmt. ¶ 13.)

The flight landed in Beijing on November 30, 2012 and arrived at the gate at around 5:31 a.m., Beijing time. (Stmt. ¶ 14.) The passengers disembarked through both the L1 (forward of first class) and L2 (behind first class) doors. (Stmt. ¶ 15.) Two flight attendants, Gao Yi and Jiang Shan, were stationed inside the aircraft near the L1 door as the passengers left. (Stmt. ¶ 16.) Neither noticed Ms. Wu's exit, and they did not see her collapse. (Stmt. ¶ 17.) But while inside the aircraft, both flight attendants heard a commotion outside the aircraft and were informed that a passenger had fainted on the jet bridge. (Stmt. ¶ 18.) They left the airplane and found Ms. Wu lying face up, sideways on the jet bridge, approximately 2 to 3 meters (6 to 10 feet) from the aircraft door. (Stmt. ¶ 19.) Ms. Wu was unconscious, pale, sweating, and breathing

rapidly. (Stmt. ¶ 20.) Although the flight attendants attempted first aid, administered nitroglycerin, and summoned the airport's medical team, Ms. Wu died. (Stmt. ¶ 21.) Time of death was approximately 6:20 a.m. local (Stmt. ¶ 22.) Neither of the flight attendants, nor any other fact witness, testified regarding the condition of the aircraft door at the time the passengers deplaned. (Stmt. ¶ 23.) A later photograph, taken at an unknown time by an unknown photographer, shows that there may have been a step down between the aircraft door and the jet bridge. (Stmt. ¶ 24.) There is no testimony in the record regarding whether the door sill of the aircraft had a "glossy, slippery surface" or "a rough, adhesive or other surface" at the time of Ms. Wu's death (as alleged in the complaint) and no testimony in the record regarding the condition of the door sill at the time the aircraft left Boeing's control. (Stmt. ¶ 25.)

Ms. Wu's death certificate defines her cause of death as "sudden death," caused by either pulmonary embolism or myocardial infarction, which were caused by hyperlipidemia and arteriosclerosis. (Stmt. ¶ 26.) Ms. Wu's medical history is consistent with that diagnosis. (Stmt. ¶ 27.) Ms. Wu suffered from hyperlipidemia, was obese, and was seventy years old. (Stmt. ¶ 28.) Those are all risk factors for arteriosclerosis and coronary artery disease, which can lead to myocardial infarctions. (Stmt. ¶ 29.) Further, Ms. Wu had multiple risk factors for a pulmonary embolism including the long flight, obesity, prior orthopedic surgery, and advanced age. (Stmt. ¶ 30.) There is no evidence in the record that Ms. Wu suffered from a fall while exiting the aircraft, but even a fall from the height demonstrated in the photograph is unlikely to have led to sudden death. (Stmt. ¶ 33.)

## STANDARD OF REVIEW

Summary judgment is appropriate where the admissible evidence demonstrates that there is no genuine issue of material fact preventing judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party has the burden of

either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016).

If the moving party satisfies its burden to show "an absence of evidence to support the nonmoving party's case," *Celotex*, 477 U.S. at 325, the non-moving party must respond with "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Conclusory assertions and references to the pleadings cannot defeat a motion for summary judgment. *Bridgeman v. New Trier High Sch. Dist. No. 203*, 128 F.3d 1146, 1148 (7th Cir. 1997). If the non-moving party fails to present evidence that is "significantly probative" or more than "merely colorable" on an element of the claim on which that party has the burden of proof, the movant is entitled to judgment as a matter of law. *Riad v. 520 S. Mich. Ave. Assocs.*, 78 F. Supp. 2d 748, 757 (N.D. Ill. 1999) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

Plaintiff cannot establish causation "by speculation, surmise, or conjecture." *Gyllin v. College Craft Enters., Ltd.*, 260 Ill. App. 3d 707, 711 (2d Dist. 1994); *see also Wintz v. Northrop Corp.*, 110 F.3d 508, 515 (7th Cir. 1997) (there must be "reasonable certainty that the defendant's acts caused the injury"). "[S]peculation about causation will not defeat summary judgment." *Joyce v. J.C. Penney Corp.*, 389 Fed. Appx. 529, 531 (7th Cir. 2010); *see also Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 932 (7th Cir. 1995) ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment").

**ARGUMENT**

**I.     Plaintiff's failure to identify a product expert warrants summary judgment because a product defect cannot be established in this case without expert testimony.**

Plaintiff alleges strict liability and negligence against Boeing. For strict product liability, Plaintiff must prove "that the injury complained of resulted from a condition of the product, that the condition was unreasonably dangerous, and that it existed at the time the product left the manufacturer's control." *Mikolajczyk v. Ford Motor Co.*, 231 Ill. 2d 516, 525 (2008).[1] "The key inquiry is whether the allegedly defective condition made the product unreasonably dangerous." *Salerno v. Innovative Surveillance Tech., Inc.*, 402 Ill. App. 3d 490, 498 (1st Dist. 2010). Similarly, to recover under a negligence theory, Plaintiff must prove "that the manufacturer: (1) deviated from the standard of care that other manufacturers in the industry followed at the time that the product was designed; or (2) knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and that it failed to warn of the product's dangerous propensity." *Salerno*, 402 Ill. App. at 498. Under either a strict liability or negligence theory, a plaintiff must use expert testimony to demonstrate that a complex product is unreasonably dangerous. *See Thornton v. M7 Aerospace LP*, 796 F.3d 757, 773 (7th Cir. 2015) ("[Plaintiffs'] failure to come forward with expert testimony regarding any alleged design defect or dangerousness is fatal to their claim.").

A large commercial jet aircraft is a complex product. Yet Plaintiff identified no expert on aircraft design. (Stmt. ¶ 33.) Plaintiff's only identified expert, Dr. Gary Harris, an emergency

---

[1] Boeing is only analyzing Illinois law and Seventh Circuit precedent, because either suffices to resolve this case. Plaintiff has not filed an application to use Chinese law under FRCP 44.1. The aircraft was manufactured in Washington, but Washington, like Illinois, asks whether a product was reasonably safe at the time it left the manufacturer's control and whether the condition of the product proximately caused the alleged injury. *See Ruiz-Guzman v. Amvac Chem. Corp.*, 141 Wash. 2d 493, 498 (2000) (analyzing Washington Product Liability Act). With no conflict, a court may apply forum law. *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 397 n.1 (7th Cir. 2009). And the federal rules may control the necessity of expert evidence in proving a product liability claim. *See Show v. Ford Motor Co.*, 659 F.3d 584, 586 (7th Cir. 2011) ("Perhaps federal rather than state law determines whether expert evidence is essential.").

room physician, is not qualified to offer an opinion regarding any alleged defect in the aircraft. (*Id.*) Dr. Harris himself confirmed that he did not offer an opinion regarding any alleged defect. (*Id*.) This lack of expert testimony is fatal to Plaintiff's claims because no lay witness can provide testimony that the surface of the door sill was defective or unreasonably dangerous. *See, e.g., Henry v. Panasonic Factory Automation Co.*, 396 Ill. App. 3d 321, 326–27 (1st Dist. 2009) (products liability cases which involve complex products beyond a lay person's understanding require expert testimony). Plaintiff conceded in discovery that the nature of the defects and the design of the door were the province of expert testimony:

---

**INTERROGATORY NO. 8**

Describe in detail the nature of the alleged design defect in the sill of the external fuselage door on the Subject Aircraft.

   **ANSWER:**   Plaintiff objects to this interrogatory as seeking expert witness testimony. The Court has not yet set a date for expert witnesses. Plaintiff will respond further on such date as set by the Court.

**INTERROGATORY NO. 9**

If you have knowledge or information of a feasible alternative design for the sill of the external fuselage door on the Subject Aircraft that would have eliminated the alleged design defect, please describe with specificity the design change that you contend was feasible and would have rendered the Subject Aircraft non-defective and identify all persons with relevant knowledge of the alternative design and describe the basis of their knowledge.

   **ANSWER:**   Plaintiff objects to this interrogatory as seeking expert witness testimony. The Court has not yet set a date for expert witnesses. Plaintiff will respond further on such date as set by the Court.

**INTERROGATORY NO. 10**

With respect to your allegation that Boeing was negligent in any manner that proximately caused the Incident, please describe in detail the nature of such alleged negligence and explain how you believe it proximately caused the Incident, and identify all persons with relevant knowledge that supports your claim and describe the basis of their knowledge.

   **ANSWER:**   Plaintiff objects to this interrogatory as seeking expert witness testimony. The Court has not yet set a date for expert witnesses. Plaintiff will respond further on such date as set by the Court.

---

6

Despite that concession, Plaintiff identified no expert witness to opine on those topics before the Court's expert disclosure deadline. (Stmt. ¶ 33.)

This Court has repeatedly granted summary judgment where a plaintiff failed to provide expert testimony to establish an unreasonably dangerous defect. *See, e.g., Show v. Ford Motor Co.,* 697 F. Supp. 2d 975, 983–84 (N.D. Ill. 2010), *aff'd,* 659 F.3d 584 (7th Cir. 2011) (summary judgment was appropriate give plaintiff's failure to provide expert testimony regarding automobile design); *Fulton v. Theradyne Corp.*, No. 06 C 1321, 2007 WL 772953, at *5 (N.D. Ill. Mar. 12, 2007) (same regarding walker design); *Klootwyk v. DaimlerChrysler Corp.*, No. 01 C 6127, 2003 WL 21038417, at *3 (N.D. Ill. May 7, 2003) (same regarding automobile airbag design); *Muller v. Synthes Corp.*, No. 99 C 1492, 2002 WL 460827, at *6 (N.D. Ill. Mar. 26, 2002) (same regarding surgical implant device). *Fulton* is instructive. In *Fulton*, the plaintiff alleged that a decedent fell and cut herself on her walker—the decedent died from complications from surgery to treat her injuries. 2007 WL 772953, at *1. The plaintiff brought product liability claims asserting that the walker was defective in its design and manufacture. *Id.* This Court entered summary judgment in favor of the defendants because plaintiff did not timely disclose an expert to testify regarding the alleged defect in the walker's design and manufacture. *Id.* at *5. The Court held that the walker was a specially designed assistive device, which required specialized testimony to explain. *Id.* Likewise, here, the aircraft is a complex product which requires expert testimony to prove the existence of a defect. Summary judgment is appropriate.

In the absence of expert testimony, Illinois law allows lay witness testimony to establish product liability only "when the average juror would be able to understand how the product functions with 'common knowledge'." *Show.*, 697 F. Supp. 2d at 983 (citing *Baltus v. Weaver Div. of Kidde & Co.*, 199 Ill. App. 3d 821, 835 (1990)). Although a door in a building might

under some circumstances theoretically comply with this "common knowledge" requirement, an aircraft door does not.[2]

Unlike typical premises doors, the doors of commercial aircraft are complicated and regulated technical products that both seal the aircraft and allow maintenance of cabin pressure at altitude and provide escape slides and other safety features in emergency situations. *See* 14 C.F.R. § 25.783 (FAA regulations for fuselage doors). Laypeople are not familiar with the technical requirements, design tradeoffs, regulations and other data points which are involved in the design and manufacture of aircraft fuselage doors. There can be no question that the design and manufacture of commercial airplanes like the Boeing 777-300 require specialized knowledge beyond that of the ordinary layperson. Aeronautical engineering is a separate and specialized field of engineering, for which universities offer targeted courses of study and degree programs. *E.g.,* University of Illinois, Aerospace Engineering Department, http://aerospace.illinois.edu/.

Aircraft are complex, specialized products, and Plaintiff was required to produce an expert witness to establish the existence of a defective condition in the aircraft or that the door did not conform to the standard of care in the industry. Plaintiff did not do so. Summary judgment in favor of Boeing is warranted on this ground alone.

**II.    Plaintiff also has insufficient evidence from which a reasonable jury could ever adopt Plaintiff's speculative theory that Ms. Wu slipped and fell in a manner causing sudden death.**

No evidence supports Plaintiff's theory that a defective design of the door was the cause of Ms. Wu's death. Indeed, there is no evidence that Ms. Wu slipped while exiting the aircraft, no evidence regarding the condition of the aircraft door and no admissible evidence that Ms.

---

[2] In fact, some courts have required expert testimony to demonstrate that the design of a building door was defective. *See, e.g. McKee v. State,* 906 N.Y.S.2d 632, 633 (N.Y. App. Div. 2010).

Wu's death was caused by a fall, rather than sudden death. The failure of proof on each, much less all, of these elements of plaintiff's theory is fatal to his claim.

> ### A. Plaintiff has no evidence that Boeing's aircraft was the proximate cause of Ms. Wu's death because there is no evidence that Ms. Wu slipped while exiting the aircraft.

Plaintiff must prove that the alleged defect in the aircraft proximately caused Ms. Wu's death. *Thornton*, 796 F.3d at 770. The "element of proximate cause is established only when the defendant's conduct is shown with reasonable certainty to have caused the plaintiff's injury." *Gyllin*, 260 Ill. App. 3d at 715. Plaintiff cannot meet his burden to prove causation with speculation or by asserting a mere *possibility* that the alleged door sill defects caused decedent's death. Plaintiff cannot establish causation "by speculation, surmise, or conjecture," *id.* at 711, and there must be "reasonable certainty that the defendant's acts caused the injury," *Wintz*, 110 F.3d at 515. *See also Hedberg*, 47 F.3d at 932 ("Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment").

Plaintiff identified no percipient witness of Ms. Wu's collapse and loss of consciousness; flight attendants found her unconscious, lying face-up and sideways several feet from the door. At the time of Ms. Wu's death, Plaintiff was in Massachusetts and Plaintiff's sister was outside the airport. (Stmt. ¶ 34.) Flight attendants Gao Yi and Jiang Shan testified that they were inside the aircraft and did not see Ms. Wu collapse. (Stmt. ¶¶ 16-18.) In her affidavit, flight attendant Chen Cheng likewise testified that she was inside the aircraft and did not see Ms. Wu collapse.[3] (Stmt. ¶¶ 18-19.) Plaintiff has no direct evidence of Ms. Wu's collapse—no identified witness is

---

[3] Even if this Court excludes Ms. Chen's affidavit, there is no indication that she saw Ms. Wu collapse. Gao Yi testified that Ms. Chen was inside the aircraft at the time Ms. Wu collapsed. (Stmt. ¶ 35.)

able to testify regarding her physical state, her demeanor, or her location relative to the aircraft at the time she lost consciousness. In sum, no direct evidence supports Plaintiff's theory.

Without direct evidence, Plaintiff's case is entirely circumstantial. "While circumstantial evidence is sometimes acceptable to prove causation, liability cannot be based on mere speculation, guess, or conjecture. ***The circumstances must justify a reasonable inference of probability of negligence, as distinguished from mere possibility***." *Gyllin*, 260 Ill. App. 3d at 714 (emphasis added); *see also Hudson v. Twenty-Three East Adams St. Corp.*, 787 F. Supp. 141, 145 (N.D. Ill. 1992) (same). "[A] fact cannot be established through circumstantial evidence unless the circumstances are so related to each other that it is the only probable, and not merely possible, conclusion that may be drawn." *Keating v. 68th & Paxton, L.L.C.*, 401 Ill. App. 3d 456, 473 (1st Dist. 2010) (granting summary judgment based on lack of causation evidence). "If plaintiff relies upon circumstantial evidence to establish proximate cause to defeat a motion for summary judgment, the circumstantial evidence must be of such a nature and so related as to make the conclusion more probable as opposed to merely possible." *Majetich v. P.T. Ferro Const. Co.*, 389 Ill. App. 3d 220, 225 (3d Dist. 2009). Circumstantial evidence will only suffice to establish causation "by facts and circumstances which, ***in the light of ordinary experience***, ***reasonably suggest*** that the defendant's negligence operated to produce the injury." *Gyllin*, 260 Ill. App. 3d at 713 (emphasis in original).

Far from pointing solely toward Plaintiff's theory, the circumstantial evidence supports the theory that Ms. Wu collapsed after she exited the aircraft: the flight attendants heard a commotion coming from *outside* of the aircraft; responders found Ms. Wu 6 to 10 feet from the aircraft door, lying face up and sideways on the jet bridge; and the death certificate showed her cause of death as "sudden death." (Stmt. ¶¶ 18, 19, 26.) It is incredibly unlikely that Ms. Wu

slipped while exiting from the aircraft, fell to the ground with the force to cause fatal injuries, and managed to come to a rest yards away from the aircraft while turning ninety degrees from her direction of travel and onto her back.[4] Plaintiff's assertion that Ms. Wu's death was caused by the door sill is based on nothing more than conjecture—the belief that *if* the door were slippery, Ms. Wu *may* have slipped or lost her footing, and then *may* have fell so hard or in such a way as to cause the very unlikely event of sudden death from a fall from modest height.

The Seventh Circuit has held that summary judgment is appropriate when Plaintiff has nothing more than an inference of causation. *See Thornton*, 796 F.3d at 771. In *Thornton*, plaintiff alleged that the defendant's navigational charts were defective and caused an airplane crash in Australia. *Id.* at 769-70. While plaintiff could produce some evidence that the charts were imperfect, plaintiff could produce no evidence that anything in the charts caused the accident. *Id.* at 771. The Seventh Circuit upheld summary judgment in favor of the chart manufacturer finding that any allegation of causation was impermissible speculation. *Id.* Similarly, here, the theory that the aircraft door—much less some defect in the door—caused Ms. Wu's death is total conjecture. Summary judgment is proper.

### B. Plaintiff has no evidence regarding the condition of the aircraft door.

As noted above, to prove a product liability claim Plaintiff must prove "that the injury complained of resulted from a condition of the product… and that it existed at the time the product left the manufacturer's control." *Mikolajczyk*, 231 Ill. 2d at 525. Plaintiff has no direct

---

[4] Plaintiff also adduced no evidence relating to whether Ms. Wu exercised ordinary care in disembarking from the aircraft. *See Galvan v. Delta Air Lines, Inc.*, No. 2:13-CV-222 WOB-CJS, 2015 WL 3631846, at *3 (E.D. Ky. June 9, 2015) (finding no liability for plaintiff tripping on a jet bridge when "any person paying minimal attention could identify the [alleged hazard] and safely step over them if he or she so desired.") Nor is there any evidence that reasonably suggests that Ms. Wu slipped and fell given the ordinary experience of the millions of passengers who disembark from Boeing aircraft without incident. *See Weaver v. Cont'l Airlines, Inc.*, No. CIV.A. H-13-3045, 2014 WL 2462979, at *3 (S.D. Tex. June 2, 2014) (plaintiff could not prove premises liability claim due to gap between aircraft and jet bridge when she failed to present evidence that "similar gaps on other jetbridges caused any other airline passenger or employee to fall.").

evidence of the condition of the aircraft door sill at the time of Ms. Wu's collapse and death. (Stmt. ¶ 23.) The only potential evidence is a photograph taken at an unknown time after Ms. Wu's death, taken by an unknown photographer. (Stmt. ¶ 24.)

That photograph is inadmissible. *See Moran v. Stratton,* No. 07-1250, 2010 WL 2682399, at *2 (C.D. Ill. July 6, 2010) (excluding photographs for lack of foundation when there was "no information at all about when these photos were taken, whether [plaintiff] was there, and if not, how he knows that they accurately depict anything pertinent"). But even if it were admissible, it does not show the condition of the door sill at the time of Ms. Wu's collapse—the door sill is in the background, out of focus and the texture and material of the surface cannot be evaluated. Indistinct photographs with no further foundation cannot form a basis to defeat summary judgment. *See, e.g., Chambers v. Menard, Inc.*, No. 14 C 2306, 2015 WL 3798081, at *3 (N.D. Ill. June 17, 2015). In *Chambers*, this Court held that photographs depicting a "darkened patch of cement" were insufficient to show that a parking lot had a design defect which caused the plaintiff to slip and fall. The photograph here likewise only shows the door sill as a darkened surface outside of the focal area of the photograph. That is not sufficient to demonstrate the condition of the aircraft door. Further, the photograph shows a height differential between the aircraft door and the jet bridge. Plaintiff has not provided any evidence regarding the interaction of this height differential—which was not caused by Boeing—and the condition of the aircraft door itself. *Cf. Weaver v. Cont'l Airlines, Inc.*, No. CIV.A. H-13-3045, 2014 WL 2462979, at *3 (S.D. Tex. June 2, 2014) ("Plaintiff has failed to present evidence that the gap between the airplane and the jet bridge walkway, viewed objectively…, involved an extreme degree of risk.").

Finally, even if Plaintiff could show the condition of the aircraft door at the time of Ms. Wu's death, there is no evidence that the aircraft door was in that same condition at the time it left Boeing's control. (Stmt. ¶ 25.) Without evidence of the condition of the aircraft door sill at both delivery and Ms. Wu's death, Plaintiff cannot prove his case against Boeing, and summary judgment is appropriate. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 899 (7th Cir. 2011) (summary judgment was proper when Plaintiff had no evidence that the product was defective at the time it left manufacture's control).

### C.     Plaintiff has no evidence Ms. Wu's death was caused by a fall.

As set forth in Boeing and Air China's Joint Motion to Strike Plaintiff's Expert Report, Plaintiff's medical expert, Dr. Gary Harris, did not base his opinions on any reliable, scientific methodology. Those opinions are the product of mere speculation and should be stricken.[5] Dr. Harris, who is an emergency room physician, opined that Ms. Wu suffered a fall from the aircraft doorway while exiting the aircraft. (Stmt. ¶ 36.) That opinion is well outside Dr. Harris's expertise and total conjecture supported by no scientific sources or methods. *See Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 659-60 (7th Cir. 1991) ("[I]nferences and opinions must be grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.").

Dr. Harris's opinion that Ms. Wu's death was caused by trauma to her head and/or cervical spine was also not based on any review of Ms. Wu's condition or symptoms and was not based on a recognized scientific method. *See Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000) ("Even a supremely qualified expert cannot waltz into a courtroom and render opinions unless those opinions are based upon some recognized scientific method."). Because

---

[5] Boeing incorporates the Joint Motion to Strike in this Summary Judgment Motion.

there is no basis for Dr. Harris's report, Plaintiff cannot use that report or Dr. Harris' testimony to oppose summary judgment. *Gyllin*, 260 Ill. App. 3d at 715 ("When there is no factual support for an expert's conclusions, his conclusions alone do not create a question of fact."). Without Dr. Harris' testimony, no reasonable finder of fact could conclude that Ms. Wu died of anything other than sudden death as a result of either pulmonary embolism or myocardial infarction—the cause of death on her death certificate. (Stmt. ¶ 26.) Plaintiff cannot provide evidence to support his claim. The Court should grant summary judgment in favor of Boeing.

## CONCLUSION

Plaintiff has effectively conceded the lack of a product defect because he has not identified an expert witness to testify regarding the allegedly defective condition of the Boeing 777 aircraft at issue in this matter. The lack of an expert witness is dispositive. But even if it were not, there is no direct or circumstantial evidence demonstrating that Ms. Wu slipped while exiting the aircraft, no evidence regarding the condition of the aircraft door, and no admissible evidence contradicting the finding in the death certificate that Ms. Wu died of sudden death caused by pulmonary embolism or myocardial infarction. Her unfortunate death was not proximately caused by Boeing or its products. Summary judgment should be entered in favor of Boeing on counts II and III of the Complaint.

Respectfully submitted,

THE BOEING COMPANY

By: s/ Bates McIntyre Larson
      One of Its Attorneys

Bates McIntyre Larson (#6272698)
Kathleen A. Stetsko (#6297704)
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone : (312) 324-8400
blarson@perkinscoie.com
kstetsko@perkinscoie.com

14

01038-8268/92066980.4

## CERTIFICATE OF SERVICE

I, Bates McIntyre Larson, certify that on Friday, September 2, 2016, I caused the

preceding **MEMORANDUM IN SUPPORT OF BOEING'S MOTION FOR SUMMARY**

**JUDGMENT** to be filed pursuant to the Court's CM/ECF system and served via the Court's

CM/ECF System on all counsel of record.


/s/ Bates McIntyre Larson_____
One of the Attorneys for
The Boeing Company


Bates McIntyre Larson (#627698)
Kathleen A. Stetsko (#6297704)
PERKINS COIE LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603
Telephone: (312) 324-8400
blarson@perkinscoie.com
kstetsko@perkinscoie.com